# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re: RICKEY D. HERNDERSON and
ANGELIQUE S. HENDERSON
_____Debtor_____/

Case No: 10-36073-JKO

Chapter 13

## MOTION TO VALUE AND DETERMINE SECURED STATUS OF LIEN ON REAL PROPERTY

### IMPORTANT NOTICE TO CREDITORS:
### THIS IS A MOTION TO VALUE YOUR COLLATERAL

**This Motion seeks to value collateral described below securing the claim of the creditor listed below.**

**If you have not filed a proof of claim, you have until the later of the claims bar date or 21 days from the date this Motion was served upon you to file a proof of claim or you will be deemed to have waived the right to payment of any unsecured claim to which you might otherwise be entitled. [See Local Rule 3015-3(A)(4)]**

1. Pursuant to 11 U.S.C. §506, Bankruptcy Rule 3012, Local Rule 3015-3, the debtors seek to value real property securing the claim of <u>IndyMac Mortgage Services,</u> (the "Lender"). Lender holds a mortgage recorded at OR Book <u>41869</u>, Page <u>258 et seq</u>, of the official records of <u>Broward</u> County, Florida.

2. The real property is located at <u>16370 SW 16 St, Pembroke Pines, Florida 33027,</u> and is more particularly described as follows:

   LOT 34, BLOCK 12, OF HEFILER HOMES AT PEMBROKE SHORES, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 159, PAGE 9, OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA.
   (A/K/A 1-0-20-05-3490)

3. At the time of the filing of this case, the value of the real property was <u>$310,000.00</u> as determined by a<u> Advanced Appraisals, Inc</u>.

4. <u>CitiMortgage, Inc</u> holds a lien on the real property, senior in priority to Lender, securing a claim in the amount of <u>$326,289.00</u>.

5. *(Select only one):*

   <u>X</u>    Lender's collateral consists solely of the debtors' principal residence. As there is no equity in the real property after payment in full of the claims secured by liens senior to that of Lender, the value of Lender's secured interest in the real property is $0.

___ Lender's collateral is not solely the debtors' principal residence. After payment in full of the claims secured by liens senior to that of Lender, there is equity of $0.00 remaining in the real property. Accordingly, the value of Lender's secured interest in the real property is $0.00 and the value of the Lender's unsecured, deficiency claim is $0.00

6. The undersigned reviewed the docket and claims register and states (select only one):

X   Lender has not filed a proof of claim in this case. The trustee shall not disburse any payments to Lender unless a proof of claim is timely filed. In the event a proof of claim is timely filed, it shall be classified as a secured claim to the extent provided in paragraph 5, above, and as a general unsecured claim for any deficiency, regardless of the original classification in the proof of claim as filed.

or

___ Lender has filed a proof of claim in this case. It shall be classified as a secured claim to the extent provided in paragraph 5, above, and as a general unsecured claim for any deficiency, regardless of the original classification in the proof of claim.

7. The subject real property may not be sold or refinanced without proper notice and further order of the court.

**WHEREFORE**, the debtors respectfully request an order of the Court (a) determining the value of the real property in the amount asserted in this Motion, (b) determining the secured status of the Lender's lien as stated above, (c) determining that any timely filed proof of claim is classified as stated above, (d) if Lender's secured interest in the real property is determined to be $0, deeming Lender's mortgage on the real property void and extinguished automatically, without further order of the Court, upon entry of the debtors' discharge in this chapter 13 case, and (e) providing such other and further relief as is just.

**NOTICE IS HEREBY GIVEN THAT:**

1. In accordance with the rules of this Court, unless an objection is filed with the Court and served upon the debtors, the debtors' attorney, and the trustee at or before the hearing scheduled on this Motion, the value of the collateral may be established at the amount stated above without further notice, hearing or order of the Court. Pursuant to Local Rule 3015-3, timely raised objections will be heard at the hearing scheduled on the Motion.

2. The undersigned acknowledges that this Motion and the notice of hearing thereon must be served pursuant to Bankruptcy Rule 7004 and Local Rule 3015-3 at least 21 days prior to the hearing date and that a certificate of service must be filed when the Motion and notice of hearing thereon are served.

Submitted By:

The Bankruptcy Law Offices of James Schwitalla, P.A.
Park Place II • 12954 SW 133 Court • Miami, FL 33186 • Telephone: (305) 278-0811 • Telecopier (305) 278-0812
www.MiamiBankruptcy.net

LF-77 (rev. 01/08/10)

/s/ James Schwitalla
James Schwitalla, Esquire
F.B.N. 911488
Attorney for Debtors
12954 S.W. 133 Court
Miami, Florida 33186
Office (305) 278-0811

The Bankruptcy Law Offices of James Schwitalla, P.A.
Park Place II • 12954 SW 133 Court • Miami, FL 33186 • Telephone: (305) 278-0811 • Telecopier (305) 278-0812
www.MiamiBankruptcy.net

LF-77 (rev. 01/08/10)

# FannieMae
## SUMMARY APPRAISAL REPORT
### Desktop Underwriter Quantitative Analysis Appraisal Report

File No. 100601-003

**THIS SUMMARY APPRAISAL REPORT IS INTENDED FOR USE BY THE LENDER/CLIENT FOR A MORTGAGE FINANCE TRANSACTION ONLY.**

### SUBJECT

- Property Address: 16370 SW 16 STREET
- City: PEMBROKE PINES
- State: FL
- Zip Code: 33027
- Legal Description: HEFTLER HOMES AT PEMBROKE SHORES 159-9 B LOT 34 BLK 12
- County: BROWARD
- Assessor's Parcel No.: 51-40-20-05-3490
- Tax Year: 2009
- R.E. Taxes $: 4,754
- Special Assessments $: UNKNOWN
- Borrower: N/A
- Current Owner: HENDERSON, RICKEY D & ANGELIQUE
- Occupant: [X] Owner [ ] Tenant [ ] Vacant
- Neighborhood or Project Name: HEFTLER HOMES
- Project Type: [X] PUD [ ] Condominium
- HOA $: 119 /Mo.
- Sales Price $: N/A
- Date of Sale: 5-26-2010 INSP
- Description / $ amount of loan charges/concessions to be paid by seller: N/A
- Property rights appraised: [X] Fee Simple [ ] Leasehold
- Map Reference: 51-40-20
- Census Tract: 1103.04

Note: Race and the racial composition of the neighborhood are not appraisal factors.

### NEIGHBORHOOD

- Location: [ ] Urban [X] Suburban [ ] Rural
- Built up: [X] Over 75% [ ] 25-75% [ ] Under 25%
- Growth rate: [ ] Rapid [X] Stable [ ] Slow
- Property values: [ ] Increasing [ ] Stable [X] Declining
- Demand/supply: [ ] Shortage [ ] In balance [X] Over supply
- Marketing time: [ ] Under 3 mos. [ ] 3-6 mos. [X] Over 6 mos.

Single family housing: PRICE $(000) 200+ Low / 450+ High; AGE (yrs) 5 Low / 22 High; Predominant: mixed varied

Condominium housing: N/A

Neighborhood boundaries: The subject is located: West of I-75 expressway, South of Sheridan Street, East of SW 172 Street, North of Pines Blvd, in the City of Pembroke Pines.

### SITE

- Dimensions: no survey given to the appraiser
- Site area: 9,596 SqFt
- Shape: rectangular
- Specific zoning classification and description: 01-pud single family residential
- Zoning compliance: [X] Legal [ ] Legal nonconforming (Grandfathered use) [ ] Illegal, attach description [ ] No zoning
- Highest and best use of subject property as improved (or as proposed per plans and specifications): [X] Present use [ ] Other use, attach description

Utilities — Public / Other:
- Electricity: [X] Public
- Gas: 
- Water: [X] Public
- Sanitary Sewer: [X] Public

Off-site Improvements — Type / Public / Private:
- Street: paved asphalt [X] Public
- Alley: none

- Are there any apparent adverse site conditions (easements, encroachments, special assessments, slide areas, etc.)? [ ] Yes [X] No. If Yes, attach description.
- Source(s) used for physical characteristics of property: [X] Interior and exterior inspection [ ] Exterior inspection from street [ ] Previous appraisal files [ ] MLS [ ] Assessment and tax records [ ] Prior inspection [ ] Property owner [ ] Other

### IMPROVEMENTS

- No. of Stories: 2
- Type (Det./Att.): detached
- Exterior Walls: CBS
- Roof Surface: s-tile
- Manufactured Housing: [ ] Yes [X] No
- Does the property generally conform to the neighborhood in terms of style, condition, and construction materials? [X] Yes [ ] No
- Are there any apparent physical deficiencies or conditions that would affect the soundness or structural integrity of the improvements or the livability of the property? [ ] Yes [X] No
- Are there any apparent adverse environmental conditions (hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property? [ ] Yes [X] No

I researched the subject market area for comparable listings and sales that are the most similar and proximate to the subject property.
- My research revealed a total of 6 sales ranging in sales price from $205,000 to $430,000.
- My research revealed a total of 2 listings ranging in list price from $275,000 to $550,000.

The analysis of the comparable sales below reflects market reaction to significant variations between the sales and the subject property.

### QUANTITATIVE SALES COMPARISON ANALYSIS

| ITEM | SUBJECT | SALE 1 | Adj | SALE 2 | Adj | SALE 3 | Adj |
|---|---|---|---|---|---|---|---|
| Address | 16370 SW 16 STREET, PEMBROKE PINES, FL 33027 | 16384 SW 16 STREET, PEMBROKE PINES, FL 33027 | | 16738 SW 16 STREET, PEMBROKE PINES, FL 33027 | | 15850 SW 16TH COURT, PEMBROKE PINES, FL 33027 | |
| Proximity to Subject | | 0.01 Miles W | | 0.19 Miles WSW | | 0.50 Miles ENE | |
| Sales Price | $ N/A | $335,000 | | $309,900 | | $275,000 | |
| Price/Gross Liv. Area | $ | $109.41 | | $113.85 | | $83.36 | |
| Data/Verification Sources | | ISCNET/MLX/tax records | | ISCNET/MLX/tax records | | ISCNET/MLX/tax records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $Adjustment | DESCRIPTION | +(-) $Adjustment | DESCRIPTION | +(-) $Adjustment |
| Sales or Financing Concessions | | CONV. MTG. NO CONCESSIONS | | FHA NO CONCESSIONS | | ALL CASH No Concessions | |
| Date of Sale/Time | | 01/05/2010 (-4%) | -13,400 | 05/20/2010 | | 05/25/2010 | |
| Location | Average | Average | | Average | | Average | |
| Site | 9596 SqFt | 12735 SQFT | -6278 | 7475 SqFt | 4242 | 9596 SqFt | |
| View | Residential | Residential | | Residential | | Residential/LAKE | -5000 |
| Design (Style) | Contemporary | Contemporary | | Contemporary | | Contemporary | |
| Actual Age (Yrs.) | 11 | 11 | | 7 | | 12 | |
| Condition | AVERAGE/GOOD | AVERAGE/GOOD | | AVERAGE/GOOD | | AVERAGE/GOOD | |
| Above Grade Room Count | Total 10 / Bdrms 6 / Baths 4.00 | Total 10 / Bdrms 6 / Baths 4.00 | | Total 9 / Bdrms 5 / Baths 3.50 | 4000 | Total 9 / Bdrms 4 / Baths 3.00 | 8000 |
| Gross Living Area | 3062 Sq. Ft. | 3062 Sq. Ft. | 0 | 2722 Sq. Ft. | 11900 | 3299 Sq. Ft. | -8295 |
| Basement & Finished Rooms Below Grade | NONE | NONE | | NONE | | NONE | |
| Garage/Carport | 3-car garage | 3-car garage | | 2-car garage | 12000 | 2-car garage | 12000 |
| POOL | NONE | YES | -12000 | NONE | | YES | -12000 |
| PATIOS | YES | YES | | YES | | YES | |
| Net Adj. (total) | | [ ]+ [X]- $ | -31678 | [X]+ [ ]- $ | 32142 | [ ]+ [X]- $ | -5295 |
| Adjusted Sales Price of Comparables | | G: 9.46% N: +9.46% $ | 303,322 | G: 10.37% N: 10.37% $ | 342,042 | G: 16.47% N: 1.93% $ | 269,705 |
| Date of Prior Sale | 10/07/1998 | 05/28/2004 -MARKET SALE | | NO SALES WITHIN 1 YEAR -MS | | 02/09/2007 | |
| Price of Prior Sale | $237,900 | $499,000 | | $-0- DEED IN 12/15/2009 | | $540,000 | |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of the prior sales of subject and comparables: NONE

Summary of sales comparison and value conclusion: ALL EMPHASIS HAS BEEN PUT ON THE MARKET SALES APPROACH TO VALUE, AS THIS MOST ACCURATLEY SHOWS WHAT ARE BUYERS WILL PURCHASE HOMES FOR IN THE CURRENT MARKET. EQUAL CONSIDERATION HAS BEEN GIVEN TO ALL 5 SALES AS ADJUSTED.

The appraisal is made [X] "as is". [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed. or [ ] subject to the following repairs, alterations or conditions:

BASED ON AN [ ] EXTERIOR INSPECTION FROM THE STREET OR AN [X] INTERIOR AND EXTERIOR INSPECTION, I ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT TO BE $ 310,000 , AS OF 5-26-2010.

# Desktop Underwriter Quantitative Analysis Appraisal Report

File No. 100601-003

**Project Information for PUDs** (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? ☐ Yes ☒ No
Provide the following information for PUDs only if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit:
Total number of phases _____ Total number of units _____ Total number of units sold _____
Total number of units rented _____ Total number of units for sale _____ Data Source(s) _____
Was the project created by the conversion of existing buildings into a PUD? ☐ Yes ☐ No  If yes, date of conversion: _____
Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source: _____
Are the common elements completed? ☐ Yes ☐ No  If No, describe status of completion: _____

Are any common elements leased to or by the Home Owners' Association? ☐ Yes ☐ No  If yes, attach addendum describing rental terms and options.
Describe common elements and recreational facilities: _____

**Project Information for Condominiums** (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? ☐ Yes ☐ No
Provide the following information for all Condominium Projects:
Total number of phases _____ Total number of units _____ Total number of units sold _____
Total number of units rented _____ Total number of units for sale _____ Data Source(s) _____
Was the project created by the conversion of existing buildings into a condominium? ☐ Yes ☐ No  If yes, date of conversion: _____
Project Type: ☐ Primary Residence ☐ Second Home or Recreational ☐ Row or Townhouse ☐ Garden ☐ Midrise ☐ Highrise ☐ _____
Condition of the project, quality of construction, unit mix, etc.: _____

Are the common elements completed? ☐ Yes ☐ No  If No, describe status of completion: _____

Are any common elements leased to or by the Home Owners' Association? ☐ Yes ☐ No  If yes, attach addendum describing rental terms and options.
Describe common elements and recreational facilities: _____

**PURPOSE OF APPRAISAL:** The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report based on a quantitative sales comparison analysis for use in a mortgage finance transaction.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of being under responsible ownership.

2. The appraiser has provided any required sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

4. The appraiser has noted in the appraisal report any adverse conditions (such as, but not limited to, needed repairs, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, expressed or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environment assessment of the property.

5. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

6. The appraiser will not disclose contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

7. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the report to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

8. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

Case No. HENDERS[...]Y & ANGELIQUE   File No. 100601-003   Page #5

# Desktop Underwriter Quantitative Analysis Appraisal Report

File No. 100601-003

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I performed this appraisal by (1) personally inspecting from the street the subject property and neighborhood and each of the comparable sales (unless I have otherwise indicated in this report that I also inspected the interior of the subject property); (2) collecting, confirming, and analyzing data from reliable public and/or private sources; and (3) reporting the results of my inspection and analysis in this summary appraisal report. I further certify that I have adequate information about the physical characteristics of the subject property and the comparable sales to develop this appraisal.

2. I have researched and analyzed the comparable sales and offerings/listings in the subject market area and have reported the comparable sales in this report that are the best available for the subject property. I further certify that adequate comparable market data exists in the general market area to develop a reliable sales comparison analysis for the subject property.

3. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware, have considered these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them, and have commented about the effect of the adverse conditions on the marketability of the subject property. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

4. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

5. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

6. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

7. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

8. I estimated the market value of the real property that is the subject of this report based on the sales comparison approach to value. I further certify that I considered the cost and income approaches to value, but, through mutual agreement with the client, did not develop them, unless I have noted otherwise in this report.

9. I performed this appraisal as a limited appraisal, subject to the Departure Provision of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of the appraisal (unless I have otherwise indicated in this report that the appraisal is a complete appraisal, in which case, the Departure Provision does not apply).

10. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value. The exposure time associated with the estimate of market value for the subject property is consistent with the marketing time noted in the Neighborhood section of this report. The marketing period concluded for the subject property at the estimated market value is also consistent with the marketing time noted in the Neighborhood section.

11. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. I further certify that no one provided significant professional assistance to me in the development of this appraisal.

**SUPERVISORY APPRAISER'S CERTIFICATION:** If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have examined the appraisal report for compliance with the Uniform Standards of Professional Appraisal Practice, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 5 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**APPRAISER:**

Signature: [signed]
Name: LANCE S. CAMPBELL, BBA, CRA
Company Name: Advanced Appraisals, Inc.
Company Address: 1560 Le Jeune Road
Miami, FL 33134
Date of Report/Signature: 6/3/2010
State Certification #: St.Cert.Gen.REA #2126
or State License #:
State: FL
Expiration Date of Certification or License: 11/30/2010

**ADDRESS OF PROPERTY APPRAISED:**
16370 SW 16 STREET
PEMBROKE PINES, FL 33027

**APPRAISED VALUE OF SUBJECT PROPERTY $** 310,000
**EFFECTIVE DATE OF APPRAISAL/INSPECTION** 5-26-2010

**SUPERVISORY APPRAISER (ONLY IF REQUIRED):**

Signature:
Name:
Company Name:
Company Address:

Date of Report/Signature:
State Certification #:
or State License #:
State:
Expiration Date of Certification or License:

**SUPERVISORY APPRAISER:**

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
☐ Did inspect interior and exterior of subject property

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street

Fannie Mae Form 2055   6-93