UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re: RICKEY HENDERSON and
ANGELIQUE HENDERSON,
Debtors.                    /

Case No. 10-36073-JKO

Chapter 13

**JOINT DEBTOR'S EMERGENCY MOTION TO AUTHORIZE SALE OF HER 1/5th INTEREST IN NON-HOMESTEAD REAL PROPERTY, AND TO DIRECT ANY CLOSING AGENT ON SAID SALE TO DISBURSE THE NET PROCEEDS THEREFROM TO JOINT DEBTOR AND OTHER SELLERS WITHOUT RESTRICTION**

REASON FOR EXIGENCY

As a result of the circumstances outlined in the numbered paragraphs below, direct, immediate and substantial harm will occur to the interest of the Joint Debtor in property, if she is not granted an Emergency Hearing. Specifically, if Joint Debtor is not granted an Emergency Hearing, she is in danger of losing her purchaser, as the contract required closing on or before January 20, 2011 (despite being "out-of-contract" the buyer has not yet walked away from the deal, but the danger exits that she may).

CERTIFICATION OF BONA FIDE EFFORT TO RESOLVE WITHOUT HEARING

The relief sought by the Joint Debtor herein is relief that can be granted only by the court. Accordingly, undersigned counsel has not contacted any party to attempt to resolve this matter without hearing.

COMES NOW, Joint Debtor, ANGELIQUE HENDERSON, by and through undersigned counsel and files this, her Emergency Motion to Authorize Sale of her $1/5^{th}$ Interest in Non-Homestead Real Property, and to Direct Any Closing Agent on Said Sale to Disburse the Net Proceeds Therefrom to Joint Debtor and other Sellers Without Restriction, and states:

1.  Debtors are operating under a confirmed Third Amended Chapter 13 plan of reorganization ("confirmed 3AP").

2.  Within Schedule A, Joint Debtor listed her $1/5^{th}$ ownership interest in her deceased mother's former homestead, which is the hereinafter described non-homestead real property of the Joint Debtor ("Non-Homestead Property") and valued same at $20,085.80.

WHEREFORE, Joint Debtor, ANGELIQUE HENDERSON, respectfully prays that this Honorable Court enter an order, in recordable form, approving the sale pursuant the Contract, and directing any closing agent to disburse the net proceeds therefrom to Joint Debtor and the other sellers without any restriction whatsoever.

Respectfully Submitted,

/s/ James Schwitalla
James Schwitalla, Esquire
Attorney for Debtor
F.B.N. 911488
Park Place II
12954 S.W. 133 Court
Miami, Florida 33186
(305) 278-0811

# Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



1  **PARTIES:** ALICE GUERRIER ("Seller"),
2  and ESMERALDA NARVAEZ ("Buyer"),
3  agree that Seller shall sell and Buyer shall buy the following described Real Property and Personal Property
4  (collectively "Property") pursuant to the terms and conditions of this Residential Contract For Sale And Purchase and
5  any riders and addenda ("Contract"):
6  **1. PROPERTY DESCRIPTION:**
7  (a) Street address, city, zip: 12327 SW 148 TE #0
8  (b) Property is located in: Dade County, Florida. Real Property Tax ID No: 30-59-24-007-0400 Miami 33186
9  (c) Legal description of the Real Property: VILLAS OF DEERWOOD REPLATPB 121-42 LOT 4A BLK 21A LOT SIZE 2233 SQ FT
10 & IN
11 together with all existing improvements and fixtures, including built-in appliances, built-in furnishings and
12 attached wall-to-wall carpeting and flooring ("Real Property") unless specifically excluded below.
13 (d) Personal Property: The following items owned by Seller and existing on the Property as of the date
14 of the initial offer are included in the purchase ("Personal Property"):  (i) range(s)/oven(s), dishwasher(s),
15 disposal, ceiling fan(s), intercom, light fixtures, rods, draperies and other window treatments, garage door
16 openers, and security gate and other access devices; and  (ii) those additional items checked below. If
17 additional details are necessary, specify below.  **If left blank, the item below is not included:**

- [X] Refrigerator(s)
- [X] Microwave oven
- [X] Washer
- [X] Dryer
- [ ] Stand-alone ice maker
- [X] Smoke detector(s)
- [ ] Security system
- [ ] Window/wall a/c
- [ ] Generator
- [ ] Pool barrier/fence
- [ ] Pool equipment
- [ ] Pool heater
- [ ] Spa or hot tub with heater
- [ ] Above ground pool
- [ ] Storage shed
- [ ] TV antenna/satellite dish
- [X] Water softener/purifier
- [ ] Storm shutters and panels

18 The only other items of Personal Property included in this purchase, and any additional details regarding
19 Personal Property, if necessary, are: _____
20
21 Personal Property is included in the Purchase Price, has no contributory value, and shall be left for the Buyer.
22 (e) The following items are excluded from the purchase: _____
23

24 **2. PURCHASE PRICE** (U.S. currency): ............................................................. $ 139,900.00
25 (a) Initial deposit to be held in escrow in the amount of **(checks subject to COLLECTION)** $ 1,390.00
26 The initial deposit made payable and delivered to "Escrow Agent" named below
27 **(CHECK ONE):** [ ] accompanies offer or [X] is to be made upon acceptance (Effective Date)
28 or [ ] is to be made within _____ (if blank, then 3) days after Effective Date
29 Escrow Agent Information: Name: The Keyes Company
30 Address: 690 Lincoln Rd #300 Miami Beach FL 33139 Phone: 305-531-5803
31 E-mail: keyes380@aol.com Fax: 877-273-4552
32 (b) Additional deposit to be delivered to Escrow Agent within _____ (if blank, then 3)
33 days after Effective Date ............................................................................................... $ .00
34 (All deposits paid or agreed to be paid, are collectively referred to as the "Deposit")
35 (c) Financing: Express as a dollar amount or percentage ("Loan Amount") see Paragraph 8 ........
36 (d) Other: HCD Funds 68510.00
37 (e) Balance to close (not including Buyer's closing costs, prepaids and prorations) by wire ...... $ 70,000.00
38 transfer or other COLLECTED funds ................................................................................. $ 0
39 NOTE: For the definition of "COLLECTION" or "COLLECTED" see STANDARD S.
40 **3. TIME FOR ACCEPTANCE OF OFFER AND COUNTER-OFFERS; EFFECTIVE DATE:**
41 (a) If not signed by Buyer and Seller, and an executed copy delivered to all parties on or before
42 10/12/2010, this offer shall be deemed withdrawn and the Deposit, if any, will be returned to Buyer.
43 Unless otherwise stated, time for acceptance of any counter-offers shall be within 2 days after the day the
44 counter-offer is delivered.
45 (b) The effective date of this Contract will be the date when the last one of the Buyer and Seller has signed or
46 initialed this offer or final counter-offer ("Effective Date").
47 **4. CLOSING DATE:** Unless modified by other provisions of this Contract, the closing of this transaction shall occur
48 and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered
49 ("Closing") on or before January 7, 2011 ("Closing Date"), at the time established by the Closing Agent.

Buyer's Initials _EN_      Page 1 of 11      Seller's Initials _W_
FloridaRealtors/FloridaBar-1    Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com    Instanet

"Exhibit A"

5. **EXTENSION OF CLOSING DATE:**
   (a) If Closing funds from Buyer's lender(s) are not available at time of Closing due to Truth In Lending Act (TILA) notice requirements, Closing shall be extended for such period necessary to satisfy TILA notice requirements, not to exceed 7 days.
   (b) If extreme weather or other condition or event constituting "Force Majeure" (see STANDARD G) causes: (i) disruption of utilities or other services essential for Closing, or (ii) Hazard, Wind, Flood or Homeowners' insurance, to become unavailable prior to Closing, Closing will be extended a reasonable time up to 3 days after restoration of utilities and other services essential to Closing, and availability of applicable Hazard, Wind, Flood or Homeowners' insurance. If restoration of such utilities or services and availability of insurance has not occurred within _____ (if left blank, 14) days after Closing Date, then either party may terminate this Contract by delivering written notice to the other party, and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

6. **OCCUPANCY AND POSSESSION:** Unless otherwise stated herein, Seller shall, at Closing, have removed all personal items and trash from the Property and shall deliver occupancy and possession, along with all keys, garage door openers, access devices and codes, as applicable, to Buyer. If Property is intended to be rented or occupied beyond Closing, the fact and terms thereof and the tenant(s) or occupants shall be disclosed pursuant to STANDARD D. If occupancy is to be delivered before Closing, Buyer assumes all risks of loss to Property from date of occupancy, shall be responsible and liable for maintenance from that date, and shall be deemed to have accepted Property in its existing condition as of time of taking occupancy, except with respect to any items identified by Buyer pursuant to Paragraph 12 prior to taking occupancy which require repair, replacement, treatment or remedy.

7. **ASSIGNABILITY:** (CHECK ONE) Buyer ☐ may assign and thereby be released from any further liability under this Contract; ☐ may assign but not be released from liability under this Contract; or ☒ may not assign this Contract.

## FINANCING

8. **FINANCING:**
   ☐ (a) Buyer will pay cash or may obtain a loan for the purchase of the Property. There is no financing contingency to Buyer's obligation to close.
   ☒ (b) This Contract is contingent upon Buyer obtaining a written loan commitment for a ☒ conventional ☐ FHA ☐ VA loan on the following terms within __30__ (if blank, then 30) days after Effective Date ("Loan Commitment Date") for: (CHECK ONE): ☐ fixed, ☐ adjustable, ☐ fixed or adjustable rate loan in the principal amount of $ _____ or _____ % of the Purchase Price, at an initial interest rate not to exceed _____ % (if blank, then prevailing rate based upon Buyer's creditworthiness), and for a term of _____ years ("Financing").

   Buyer will make mortgage loan application for the Financing within __5__ (if blank, then 5) days after Effective Date and use good faith and diligent effort to obtain a written loan commitment for the Financing ("Loan Commitment") and close this Contract. Buyer shall keep Seller and Broker fully informed about the status of mortgage loan application and Loan Commitment and authorizes Buyer's mortgage broker and Buyer's lender to disclose such status and progress to Seller and Broker.

   If Buyer does not receive Loan Commitment, then Buyer may terminate this Contract by delivering written notice to Seller, and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

   If Buyer does not deliver written notice to Seller of receipt of Loan Commitment or Buyer's written waiver of this financing contingency, then after Loan Commitment Date Seller may terminate this Contract by delivering written notice to Buyer and the Deposit shall be refunded to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.

   If Buyer delivers written notice of receipt of Loan Commitment to Seller and this Contract does not thereafter close, the Deposit shall be paid to Seller unless failure to close is due to: (1) Seller's default; (2) Property related conditions of the Loan Commitment have not been met (except when such conditions are waived by other provisions of this Contract); (3) appraisal of the Property obtained by Buyer's lender is insufficient to meet terms of the Loan Commitment; or (4) the loan is not funded due to financial failure of Buyer's lender, in which event(s) the Deposit shall be returned to Buyer, thereby releasing Buyer and Seller from all further obligations under this Contract.
   ☐ (c) Assumption of existing mortgage (see rider for terms).
   ☐ (d) Purchase money note and mortgage to Seller (see riders; addenda; or special clauses for terms).

Buyer's Initials [En] _____ Page 2 of 11 Seller's Initials _____ _____
FloridaRealtors/FloridaBar-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com. Instanet

DocuSign Envelope ID: 1D59l9A3-CA72-4EF6-B353-6D146D252AC6

## 9. CLOSING COSTS, FEES AND CHARGES

105
106  **(a) COSTS TO BE PAID BY SELLER:**
107
- Documentary stamp taxes and surtax on deed, if any
- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked)
- Title search charges (if Paragraph 9(c)(iii) is checked)
- HOA/Condominium Association estoppel fees
- Recording and other fees needed to cure title
- Seller's attorneys' fees
- Other:

108  Seller will pay the following amounts/percentages of the Purchase Price for the following costs and expenses:
109* (i) up to $ 1,000.00 or _____ % (1.5% if left blank) for General Repair Items ("General Repair
110  Limit"); and
111* (ii) up to $ 1,000.00 or _____ % (1.5% if left blank) for WDO treatment and repairs ("WDO
112  Repair Limit"); and
113* (iii) up to $ 1,000.00 or _____ % (1.5% if left blank) for costs associated with closing out open
114  or expired building permits and obtaining required building permits for any existing improvement for which a
115  permit was not obtained ("Permit Limit").
116  If, prior to Closing, Seller is unable to meet the Maintenance Requirement as required by Paragraph 11 or
117  the repairs, replacements, treatments or permitting as required by Paragraph 12, then, sums equal to 125% of
118  estimated costs to complete the applicable item(s) (but, not in excess of applicable General Repair, WDO
119  Repair, and Permit Limits set forth above, if any) shall be escrowed at Closing. If actual cost of required
120  repairs, replacements, treatment or permitting exceed applicable escrowed amounts, Seller shall pay such
121  actual costs (but, not in excess of applicable General Repair, WDO Repair, and Permit Limits set forth above).
122  Any unused portion of escrowed amount(s) shall be returned to Seller.

123* **(b) COSTS TO BE PAID BY BUYER:**
- Taxes and recording fees on notes and mortgages
- Recording fees for deed and financing statements
- Owner's Policy and Charges (if Paragraph 9(c)(ii) is checked)
- Survey (and elevation certification, if required)
- Lender's title policy and endorsements
- HOA/Condominium Association application/transfer fees
- Other:
- Loan expenses
- Appraisal fees
- Buyer's inspections
- Buyer's attorneys' fees
- All property related insurance

124* **(c) TITLE EVIDENCE AND INSURANCE:** At least _____ (if blank, then 5) days prior to Closing Date, a title
125  insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as
126  exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see
127  STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title
128  insurance covering the Real Property, a copy shall be furnished to Buyer and Closing Agent within 5 days after
129  Effective Date. The owner's title policy premium and charges for owner's policy endorsements, title search,
130  and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below
131  (CHECK ONE):
132* ☐ (i) Seller will designate Closing Agent and pay for Owner's Policy and Charges (but not including charges
133  for closing services related to Buyer's lender's policy and endorsements and loan closing, which amounts
134  shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select); or
135* ☒ (ii) Buyer will designate Closing Agent and pay for Owner's Policy and Charges and charges for closing
136  services related to Buyer's lender's policy, endorsements, and loan closing; or
137* ☐ (iii) **[MIAMI-DADE/BROWARD REGIONAL PROVISION]:** Seller will furnish a copy of a prior owner's policy
138  of title insurance or other evidence of title and pay fees for: (A) a continuation or update of such title evidence,
139  which is acceptable to Buyer's title insurance underwriter for reissue of coverage; (B) tax search; and
140  (C) municipal lien search. Buyer shall obtain and pay for post-Closing continuation and premium for Buyer's
141  owner's policy, and if applicable, Buyer's lender's policy. Seller shall not be obligated to pay more than
142* $ _____ (if blank, $200.00) for abstract continuation or title search ordered or performed by Closing
143  Agent.

144  **(d) SURVEY:** At least 5 days prior to Closing, Buyer may, at Buyer's expense, have the Real Property surveyed
145  and certified by a registered Florida surveyor ("Survey"). If Seller has a survey covering the Real Property, a
146  copy shall be furnished to Buyer and Closing Agent within 5 days after Effective Date.

147* **(e) HOME WARRANTY:** At Closing, ☐ Buyer ☐ Seller ☒ N/A will pay for a home warranty plan issued by
148* _____ . A home
149  warranty plan provides for repair or replacement of many of a home's mechanical systems and major built-in
150  appliances in the event of breakdown due to normal wear and tear during the agreement's warranty period.

151  **(f) SPECIAL ASSESSMENTS:** At Closing, Seller will pay: (i) the full amount of liens imposed by a public body
152  ("public body" does not include a Condominium or Homeowner's Association) that are certified, confirmed and
153  ratified before Closing; and (ii) the amount of the public body's most recent estimate or assessment for an

Buyer's Initials [an] Page 3 of 11 Seller's Initials [IL]
FloridaRealtors/FloridaBar-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com.

154 improvement which is substantially complete as of Effective Date, but that has not resulted in a lien being
155 imposed on the Property before Closing. Buyer will pay all other assessments. **If special assessments may**
156 **be paid in installments (CHECK ONE):**
157* ☐ **(a) Seller shall pay installments due prior to Closing and Buyer shall pay installments due after**
158 **Closing. Installments prepaid or due for the year of Closing shall be prorated.**
159* ☒ **(b) Seller shall pay the assessment(s) in full prior to or at the time of Closing.**
160 IF NEITHER BOX IS CHECKED, THEN OPTION (a) SHALL BE DEEMED SELECTED.
161 This Paragraph 9(f) shall not apply to a special benefit tax lien imposed by a community development district
162 (CDD) pursuant to Chapter 190 F.S. which lien shall be treated as an ad valorem tax and prorated pursuant to
163 STANDARD K.

## DISCLOSURES

165 **10. DISCLOSURES:**
166 (a) **RADON GAS:** Radon is a naturally occurring radioactive gas that, when it is accumulated in a building in
167 sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that
168 exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding
169 radon and radon testing may be obtained from your county health department.
170 (b) **PERMITS DISCLOSURE: Except as may have been disclosed by Seller to Buyer in a written disclosure,**
171 **Seller does not know of any improvements made to the Property which were made without required**
172 **permits or made pursuant to permits which have not been properly closed.**
173 (c) **MOLD:** Mold is naturally occurring and may cause health risks or damage to property. If Buyer is concerned or
174 desires additional information regarding mold, Buyer should contact an appropriate professional.
175 (d) **FLOOD ZONE; ELEVATION CERTIFICATION:** Buyer is advised to verify by elevation certificate which flood
176 zone the Property is in, whether flood insurance is required by Buyer's lender, and what restrictions apply to
177 improving the Property and rebuilding in the event of casualty. If Property is in a "Special Flood Hazard Area"
178 or "Coastal High Hazard Area" and finished floor elevation is below minimum flood elevation, Buyer may
179 terminate this Contract by delivering written notice to Seller within 20 days after Effective Date, failing which
180 Buyer accepts existing elevation of buildings and flood zone designation of Property.
181 (e) **ENERGY BROCHURE:** Buyer acknowledges receipt of Florida Energy-Efficiency Rating Information Brochure
182 required by Section 553.996, F.S.
183 (f) **LEAD-BASED PAINT:** If Property includes pre-1978 residential housing, a lead-based paint rider is
184 mandatory.
185 (g) **HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE: BUYER SHOULD NOT EXECUTE THIS**
186 **CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE HOMEOWNERS'**
187 **ASSOCIATION/COMMUNITY DISCLOSURE, IF APPLICABLE.**
188 (h) **PROPERTY TAX DISCLOSURE SUMMARY: BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT**
189 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT THE BUYER MAY BE OBLIGATED
190 TO PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
191 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN HIGHER
192 PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT THE
193 COUNTY PROPERTY APPRAISER'S OFFICE FOR INFORMATION.
194 (i) **TAX WITHHOLDING:** If Seller is a "foreign person" as defined by the Foreign Investment in Real Property Tax
195 Act ("FIRPTA"), Buyer and Seller will comply with FIRPTA, which may require Seller to provide additional cash
196 at Closing.
197 (j) **SELLER DISCLOSURE:** Seller knows of no facts materially affecting the value of the Real Property which are
198 not readily observable and which have not been disclosed to Buyer.

## PROPERTY MAINTENANCE, CONDITION, INSPECTIONS AND EXAMINATIONS

200 **11. PROPERTY MAINTENANCE:** Except for ordinary wear and tear and Casualty Loss, and those repairs,
201 replacements or treatments required to be made by this Contract, Seller shall maintain the Property, including, but
202 not limited to, lawn, shrubbery, and pool, in the condition existing as of Effective Date ("Maintenance
203 Requirement").
204 **12. PROPERTY INSPECTION AND REPAIR:**
205 (a) **INSPECTION PERIOD:** By the earlier of 15 days after Effective Date or 5 days prior to Closing Date
206 ("Inspection Period"), Buyer may, at Buyer's expense, conduct "General", "WDO", and "Permit" Inspections
207 described below. If Buyer fails to timely deliver to Seller a written notice or report required by (b), (c), or (d)
208 below, then, except for Seller's continuing Maintenance Requirement, Buyer shall have waived Seller's
209 obligation(s) to repair, replace, treat or remedy the matters not inspected and timely reported. If this Contract
210 does not close, Buyer will repair all damage to Property resulting from Buyer's inspections, return Property to
211 its pre-inspection condition and provide Seller with paid receipts for all work done on Property upon its
212 completion.

Buyer's Initials _im_ _____  Page 4 of 11  Seller's Initials _____ _____
FloridaRealtors/FloridaBar-1  Rev 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com. 

213 **(b) GENERAL PROPERTY INSPECTION AND REPAIR:**
214     (i) **General Inspection:** Those items specified in Paragraph 12(b)(ii) below, which Seller is obligated to repair
215     or replace ("General Repair Items") may be inspected ("General Inspection") by a person who specializes in
216     and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida
217     license to repair and maintain the items inspected ("Professional Inspector"). Buyer shall, within the Inspection
218     Period, inform Seller of any General Repair Items that are not in the condition required by (b)(ii) below by
219     delivering to Seller either a written notice or a copy of the portion of Professional Inspector's written report
220     dealing with such items.
221     (ii) **Property Condition:** The following items shall be free of leaks, water damage or structural damage:
222     ceiling, roof (including fascia and soffits), exterior and interior walls, doors, windows, and foundation. The
223     above items together with pool, pool equipment, non-leased major appliances, heating, cooling, mechanical,
224     electrical, security, sprinkler, septic and plumbing systems and machinery, seawalls, and dockage, are, and
225     shall be maintained until Closing, in "Working Condition" (defined below). Torn screens (including pool and patio
226     screens), fogged windows, and missing roof tiles or shingles will be repaired or replaced by Seller prior to
227     Closing. Seller is not required to repair or replace "Cosmetic Conditions" (defined below), unless the Cosmetic
228     Conditions resulted from a defect in an item Seller is obligated to repair or replace. "Working Condition" means
229     operating in the manner in which the item was designed to operate. "Cosmetic Conditions" means aesthetic
230     imperfections that do not affect Working Condition of the item, including, but not limited to, pitted marcite;
231     tears, worn spots and discoloration of floor coverings, wallpapers, or window treatments; nail holes, scrapes,
232     scratches, dents, chips or caulking in ceilings, walls, flooring, tile, fixtures, or mirrors; and minor cracks in
233     walls, floor tiles, windows, driveways, sidewalks, pool decks, and garage and patio floors. Cracked
234     roof tiles, curling or worn shingles, or limited roof life shall not be considered defects Seller must repair
235     or replace, so long as there is no evidence of actual leaks, leakage or structural damage.
236     (iii) **General Property Repairs:** Seller is only obligated to make such general repairs as are necessary to
237     bring items into the condition specified in Paragraph 12(b)(ii) above. Seller will, within 5 days after receipt of
238     Buyer's written notice or General Inspection report, either have the reported repairs to General Repair Items
239     estimated by an appropriately licensed person and a copy delivered to Buyer, or have a second inspection
240     made by a Professional Inspector and provide a copy of such report and estimates of repairs to Buyer. If
241     Buyer's and Seller's inspection reports differ and the parties cannot resolve the differences, Buyer and
242     Seller together will choose, and equally split the cost of, a third Professional Inspector, whose written report
243     will be binding on the parties.
244 If costs to repair General Repair Items equals or is less than the General Repair Limit, Seller will have repairs
245 made in accordance with Paragraph 12(f). If cost to repair General Repair Items exceeds the General
246 Repair Limit, then within 5 days after a party's receipt of the last estimate: (A) Seller may elect to pay the
247 excess by delivering written notice to Buyer, or (B) Buyer may deliver written notice to Seller designating which
248 repairs of General Repair Items Seller shall make (at a total cost to Seller not exceeding the General Repair
249 Limit) and agreeing to accept the balance of General Repair Items in their "as is" condition, subject to Seller's
250 continuing Maintenance Requirement. If neither party delivers such written notice to the other, then either party
251 may terminate this Contract and Buyer shall be refunded the Deposit, thereby releasing Buyer and Seller from
252 all further obligations under this Contract.
253 **(c) WOOD DESTROYING ORGANISM ("WDO") INSPECTION AND REPAIR:**
254     (i) **WDO Inspection:** The Property may be inspected by a Florida-licensed pest control business ("WDO
255     Inspector") to determine the existence of past or present WDO infestation and damage caused by infestation
256     ("WDO Inspection"). Buyer shall, within the Inspection Period, deliver a copy of the WDO Inspector's written
257     report to Seller if any evidence of WDO infestation or damage is found. "Wood Destroying Organism" ("WDO")
258     means arthropod or plant life, including termites, powder-post beetles, oldhouse borers and wood-decaying
259     fungi, that damages or infests seasoned wood in a structure, excluding fences.
260     (ii) **WDO Repairs:** If Seller previously treated the Property for the type of WDO found by Buyer's WDO
261     Inspection, Seller does not have to retreat the Property if there is no visible live infestation, and Seller, at
262     Seller's cost, transfers to Buyer at Closing a current full treatment warranty for the type of WDO found. Seller
263     will, within 5 days after receipt of Buyer's WDO Inspector's report, have reported WDO damage estimated by
264     an appropriately licensed person, necessary corrective treatment, if any, estimated by a WDO Inspector, and a
265     copy delivered to Buyer. Seller will have treatments and repairs made in accordance with Paragraph 12(f)
266     below up to the WDO Repair Limit. If cost to treat and repair the WDO infestations and damage to
267     Property exceeds the WDO Repair Limit, then within 5 days after receipt of Seller's estimate, Buyer may
268     deliver written notice to Seller agreeing to pay the excess, or designating which WDO repairs Seller shall
269     make (at a total cost to Seller not exceeding the WDO Repair Limit), and accepting the balance of the Property
270     in its "as is" condition with regard to WDO infestation and damage, subject to Seller's continuing Maintenance
271     Requirement. If Buyer does not deliver such written notice to Seller, then either party may terminate this

Buyer's Initials [_im_] _____ _____     Page 5 of 11     Seller's Initials _____ _____
FloridaRealtors/FloridaBar-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com. 

272 Contract by written notice to the other, and Buyer shall be refunded the Deposit, thereby releasing Buyer and
273 Seller from all further obligations under this Contract.
274 (d) **INSPECTION AND CLOSE-OUT OF BUILDING PERMITS:**
275     (i) **Permit Inspection:** Buyer may have an inspection and examination of records and documents made to
276     determine whether there exist any open or expired building permits or unpermitted improvements to the
277     Property ("Permit Inspection"). Buyer shall, within the Inspection Period, deliver written notice to Seller of the
278     existence of any open or expired building permits or unpermitted improvements to the Property.
279     (ii) **Close-Out of Building Permits:** Seller will, within 5 days after receipt of Buyer's Permit Inspection
280     notice, have an estimate of costs to remedy Permit Inspection items prepared by an appropriately licensed
281     person and a copy delivered to Buyer. No later than 5 days prior to Closing Date, Seller shall, up to the Permit
282     Limit have open and expired building permits identified by Buyer or known to Seller closed by the applicable
283     governmental entity, and obtain and close any required building permits for improvements to the Property.
284     Prior to Closing Date, Seller will provide Buyer with any written documentation that all open and expired
285     building permits identified by Buyer or known to Seller have been closed out and that Seller has obtained
286     required building permits for improvements to the Property. If final permit inspections cannot be performed due
287     to delays by the governmental entity, Closing Date shall be extended for up to 10 days to complete such final
288     inspections, failing which, either party may terminate this Contract, and Buyer shall be refunded the Deposit,
289     thereby releasing Buyer and Seller from all further obligations under this Contract.
290 If cost to close open or expired building permits or to remedy any permit violation of any governmental entity
291 exceeds Permit Limit, then within 5 days after a party's receipt of estimates of cost to remedy: (A) Seller may
292 elect to pay the excess by delivering written notice to Buyer; or (B) Buyer may deliver written notice to Seller
293 accepting the Property in its "as is" condition with regard to building permit status and agreeing to receive
294 credit from Seller at Closing in the amount of Permit Limit. If neither party delivers such written notice to the
295 other, then either party may terminate this Contract and Buyer shall be refunded the Deposit, thereby releasing
296 Buyer and Seller from all further obligations under this Contract.
297 (e) **WALK-THROUGH INSPECTION/RE-INSPECTION:** On the day prior to Closing Date, or on Closing Date prior
298     to time of Closing, as specified by Buyer, Buyer or Buyer's representative may perform a walk-through (and
299     follow-up walk-through, if necessary) inspection of the Property solely to confirm that all items of Personal
300     Property are on the Property and to verify that Seller has maintained the Property as required by the
301     Maintenance Requirement, has made repairs and replacements required by this Contract, and has met all
302     other contractual obligations.
303 (f) **REPAIR STANDARDS; ASSIGNMENT OF REPAIR AND TREATMENT CONTRACTS AND WARRANTIES:**
304     All repairs and replacements shall be completed in a good and workmanlike manner by an appropriately
305     licensed person, in accordance with all requirements of law, and shall consist of materials or items of quality,
306     value, capacity and performance comparable to, or better than, that existing as of the Effective Date. Except
307     as provided in Paragraph 12(c)(ii), at Buyer's option and cost, Seller will, at Closing, assign all assignable
308     repair, treatment and maintenance contracts and warranties to Buyer.

309 **ESCROW AGENT AND BROKER**
310 **13. ESCROW AGENT:** Any Closing Agent or Escrow Agent (collectively "Agent") receiving the Deposit, other funds
311 and other items is authorized, and agrees by acceptance of them, to deposit them promptly, hold same in escrow
312 within the State of Florida and, subject to **COLLECTION**, disburse them in accordance with terms and conditions
313 of this Contract. Failure of funds to become **COLLECTED** shall not excuse Buyer's performance. When conflicting
314 demands for the Deposit are received, or Agent has a good faith doubt as to entitlement to the Deposit, Agent
315 may take such actions permitted by this Paragraph 13, as Agent deems advisable. If in doubt as to Agent's duties
316 or liabilities under this Contract, Agent may, at Agent's option, continue to hold the subject matter of the escrow
317 until the parties agree to its disbursement or until a final judgment of a court of competent jurisdiction shall
318 determine the rights of the parties, or Agent may deposit same with the clerk of the circuit court having jurisdiction
319 of the dispute. An attorney who represents a party and also acts as Agent may represent such party in such
320 action. Upon notifying all parties concerned of such action, all liability on the part of Agent shall fully terminate,
321 except to the extent of accounting for any items previously delivered out of escrow. If a licensed real estate
322 broker, Agent will comply with provisions of Chapter 475, F.S., as amended and FREC rules to timely resolve
323 escrow disputes through mediation, arbitration, interpleader or an escrow disbursement order.
324 Any proceeding between Buyer and Seller wherein Agent is made a party because of acting as Agent hereunder,
325 or in any proceeding where Agent interpleads the subject matter of the escrow, Agent shall recover reasonable
326 attorney's fees and costs incurred, to be paid pursuant to court order out of the escrowed funds or equivalent.
327 Agent shall not be liable to any party or person for mis-delivery of any escrowed items, unless such mis-delivery is
328 due to Agent's willful breach of this Contract or Agent's gross negligence. This Paragraph 13 shall survive Closing
329 or termination of this Contract.
330 **14. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify Property condition,
331     square footage, and all other facts and representations made pursuant to this Contract and to consult appropriate

Buyer's Initials _____em_____ _____  Page 6 of 11  Seller's Initials __W__ _____
FloridaRealtors/FloridaBar-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com. 

Docusign Envelope ID: 1D59193-CA72-4EF6-B353-6D14BD252AC8

332 professionals for legal, tax, environmental, and other specialized advice concerning matters affecting the Property
333 and the transaction contemplated by this Contract. Broker represents to Buyer that Broker does not reside on the
334 Property and that all representations (oral, written or otherwise) by Broker are based on Seller representations or
335 public records. **BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
336 **GOVERNMENTAL AGENCIES FOR VERIFICATION OF PROPERTY CONDITION, SQUARE FOOTAGE AND**
337 **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE AND NOT ON THE REPRESENTATIONS (ORAL,**
338 **WRITTEN OR OTHERWISE) OF BROKER.** Buyer and Seller (individually, the "Indemnifying Party") each
339 individually indemnifies, holds harmless, and releases Broker and Broker's officers, directors, agents and
340 employees from all liability for loss or damage, including all costs and expenses, and reasonable attorney's fees
341 at all levels, suffered or incurred by Broker and Broker's officers, directors, agents and employees in connection
342 with or arising from claims, demands or causes of action instituted by Buyer or Seller based on: (i) inaccuracy of
343 information provided by the Indemnifying Party or from public records; (ii) Indemnifying Party's misstatement(s) or
344 failure to perform contractual obligations; (iii) Broker's performance, at Indemnifying Party's request, of any task
345 beyond the scope of services regulated by Chapter 475, F.S., as amended, including Broker's referral,
346 recommendation or retention of any vendor for, or on behalf of Indemnifying Party; (iv) products or services
347 provided by any such vendor for, or on behalf of, Indemnifying Party; and (v) expenses incurred by any such
348 vendor. Buyer and Seller each assumes full responsibility for selecting and compensating their respective
349 vendors and paying their other costs under this Contract whether or not this transaction closes. This
350 Paragraph 14 will not relieve Broker of statutory obligations under Chapter 475, F.S., as amended. For purposes
351 of this Paragraph 14, Broker will be treated as a party to this Contract. This Paragraph 14 shall survive Closing or
352 termination of this Contract.

353                    **DEFAULT AND DISPUTE RESOLUTION**
354 **15. DEFAULT:**
355 **(a) BUYER DEFAULT:** If Buyer fails, neglects or refuses to perform Buyer's obligations under this Contract,
356 including payment of the Deposit, within the time(s) specified, Seller may elect to recover and retain the
357 Deposit for the account of Seller as agreed upon liquidated damages, consideration for execution of this
358 Contract, and in full settlement of any claims, whereupon Buyer and Seller shall be relieved from all further
359 obligations under this Contract, or Seller, at Seller's option, may, pursuant to Paragraph 16, proceed in equity
360 to enforce Seller's rights under this Contract. The portion of the Deposit, if any, paid to Listing Broker upon
361 default by Buyer, shall be split equally between Listing Broker and Cooperating Broker; provided however,
362 Cooperating Broker's share shall not be greater than the commission amount Listing Broker had agreed to pay
363 to Cooperating Broker.
364 **(b) SELLER DEFAULT:** If for any reason other than failure of Seller to make Seller's title marketable after
365 reasonable diligent effort, Seller fails, neglects or refuses to perform Seller's obligations under this Contract,
366 Buyer may elect to receive return of Buyer's Deposit without thereby waiving any action for damages resulting
367 from Seller's breach, and, pursuant to Paragraph 16, may seek to recover such damages or seek specific
368 performance.
369 This Paragraph 15 shall survive Closing or termination of this Contract.
370 **16. DISPUTE RESOLUTION:** Unresolved controversies, claims and other matters in question between Buyer and
371 Seller arising out of, or relating to, this Contract or its breach, enforcement or interpretation ("Dispute") will be
372 settled as follows:
373 (a) Buyer and Seller will have 10 days after the date conflicting demands for the Deposit are made to attempt to
374 resolve such Dispute, failing which, Buyer and Seller shall submit such Dispute to mediation under
375 Paragraph 16(b).
376 (b) Buyer and Seller shall attempt to settle Disputes in an amicable manner through mediation pursuant to Florida
377 Rules for Certified and Court-Appointed Mediators and Chapter 44, F.S., as amended (the "Mediation Rules").
378 The mediator must be certified or must have experience in the real estate industry. Injunctive relief may be
379 sought without first complying with this Paragraph 16(b). Disputes not settled pursuant to this Paragraph 16
380 may be resolved by instituting action in the appropriate court having jurisdiction of the matter.
381 This Paragraph 16 shall survive Closing or termination of this Contract.
382 **17. ATTORNEY'S FEES; COSTS:** The parties will split equally any mediation fee incurred in any mediation permitted
383 by this Contract, and each party will pay their own costs, expenses and fees, including attorney's fees, incurred in
384 conducting the mediation. In any litigation permitted by this Contract, the prevailing party shall be entitled to
385 recover from the non-prevailing party costs and fees, including reasonable attorney's fees, incurred in conducting
386 the litigation. This Paragraph 17 shall survive Closing or termination of this Contract.
387
388 **18. STANDARDS:**           **STANDARDS FOR REAL ESTATE TRANSACTIONS ("STANDARDS")**
389 **A. TITLE.**
390 **(i) TITLE EVIDENCE; RESTRICTIONS; EASEMENTS; LIMITATIONS:** Within the time period provided in
391 Paragraph 9(c), the Title Commitment, with legible copies of instruments listed as exceptions attached thereto, shall

Buyer's Initials _im_ Page 7 of 11 Seller's Initials _[signature]_
FloridaRealtors/FloridaBar-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com

STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

be issued and delivered to Buyer. The Title Commitment shall set forth those matters to be discharged by Seller at or before Closing and shall provide that, upon recording of the deed to Buyer, an owner's policy of title insurance in the amount of the Purchase Price, shall be issued to Buyer insuring Buyer's marketable title to the Real Property, subject only to the following matters: (a) comprehensive land use plans, zoning, and other land use restrictions, prohibitions and requirements imposed by governmental authority; (b) restrictions and matters appearing on the Plat or otherwise common to the subdivision; (c) outstanding oil, gas and mineral rights of record without right of entry; (d) unplatted public utility easements of record (located contiguous to real property lines and not more than 10 feet in width as to rear or front lines and 7 1/2 feet in width as to side lines); (e) taxes for year of Closing and subsequent years; and (f) assumed mortgages and purchase money mortgages, if any (if additional items, attach addendum); provided, that, unless waived by Paragraph 12 (a), there exists at Closing no violation of the foregoing and none prevent use of the Property for **RESIDENTIAL PURPOSES**. If there exists at Closing any violation of items identified in (b) – (f) above, then the same shall be deemed a title defect. Marketable title shall be determined according to applicable Title Standards adopted by authority of The Florida Bar and in accordance with law.

(ii) **TITLE EXAMINATION:** Buyer shall have 5 days after receipt of Title Commitment to examine it and notify Seller in writing specifying defect(s), if any, that render title unmarketable. If Seller provides Title Commitment and it is delivered to Buyer less than 5 days prior to Closing Date, Buyer may extend Closing for up to 5 days after date of receipt to examine same in accordance with this STANDARD A. Seller shall have 30 days ("Cure Period") after receipt of Buyer's notice to take reasonable diligent efforts to remove defects. If Buyer fails to so notify Seller, Buyer shall be deemed to have accepted title as it then is. If Seller cures defects within Cure Period, Seller will deliver written notice to Buyer (with proof of cure acceptable to Buyer and Buyer's attorney) and the parties will close this Contract on Closing Date (or if Closing Date has passed, within 10 days after Buyer's receipt of Seller's notice). If Seller is unable to cure defects within Cure Period, then Buyer may, within 5 days after expiration of Cure Period, deliver written notice to Seller: (a) extending Cure Period for a specified period not to exceed 120 days within which Seller shall continue to use reasonable diligent effort to remove or cure the defects ("Extended Cure Period"); or (b) electing to accept title with existing defects and close this Contract on Closing Date (or if Closing Date has passed, within the earlier of 10 days after end of Extended Cure Period or Buyer's receipt of Seller's notice), or (c) electing to terminate this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. If after reasonable diligent effort, Seller is unable to timely cure defects, and Buyer does not waive the defects, this Contract shall terminate, and Buyer shall receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract.

B. **SURVEY:** If Survey discloses encroachments on the Real Property or that improvements located thereon encroach on setback lines, easements, or lands of others; or violate any restrictions, covenants, or applicable governmental regulations described in STANDARD A (i)(a), (b) or (d) above, Buyer shall deliver written notice of such matters, together with a copy of Survey, to Seller within 5 days after Buyer's receipt of Survey, but no later than Closing. If Buyer timely delivers such notice and Survey to Seller, such matters identified in the notice and Survey shall constitute a title defect, subject to cure obligations of STANDARD A above. If Seller has delivered a prior survey, Seller shall, at Buyer's request, execute an affidavit of "no change" to the Real Property since the preparation of such prior survey, to the extent the affirmations therein are true and correct.

C. **INGRESS AND EGRESS:** Seller represents that there is ingress and egress to the Real Property and title to the Real Property is insurable in accordance with STANDARD A without exception for lack of legal right of access.

D. **LEASES:** Seller shall, within 5 days after Inspection Period, furnish to Buyer copies of all written leases and estoppel letters from each tenant specifying nature and duration of tenant's occupancy, rental rates, advanced rent and security deposits paid by tenant, and income and expense statements for preceding 12 months ("Lease Information"). If Seller is unable to obtain estoppel letters from tenant(s), the same information shall be furnished by Seller to Buyer within that time period in the form of a Seller's affidavit, and Buyer may thereafter contact tenant(s) to confirm such information. If terms of the lease(s) differ materially from Seller's representations, Buyer may deliver written notice to Seller within 5 days after receipt of Lease Information, but no later than 5 days prior to Closing Date, terminating this Contract and receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller shall, at Closing, deliver and assign all original leases to Buyer who shall assume Seller's obligation thereunder.

E. **LIENS:** Seller shall furnish to Buyer at Closing an affidavit attesting: (i) to the absence of any financing statement, claims of lien or potential lienors known to Seller, and (ii) that there have been no improvements or repairs to the Real Property for 90 days immediately preceding Closing Date. If the Real Property has been improved or repaired within that time, Seller shall deliver releases or waivers of construction liens executed by all general contractors, subcontractors, suppliers and materialmen in addition to Seller's lien affidavit setting forth names of all such general contractors, subcontractors, suppliers and materialmen, further affirming that all charges for improvements or repairs which could serve as a basis for a construction lien or a claim for damages have been paid or will be paid at Closing.

F. **TIME:** Calendar days shall be used in computing time periods. Any time periods provided for in this Contract

Buyer's Initials [im] _____ _____ Page 8 of 11 Seller's Initials [LA] _____
FloridaRealtors/FloridaBar-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com. 

452 **STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)**
453 which shall end on a Saturday, Sunday, or a national legal holiday (see 5 U.S.C. 6103) shall extend to 5:00 p.m.
454 (where the Property is located) of the next business day. **Time is of the essence in this Contract.**
455 **G. FORCE MAJEURE:** Buyer or Seller shall not be required to perform any obligation under this Contract or be
456 liable to each other for damages so long as performance or non-performance of the obligation is delayed, caused or
457 prevented by Force Majeure. "Force Majeure" means: hurricanes, earthquakes, floods, fire, acts of God, unusual
458 transportation delays, wars, insurrections, acts of terrorism, and any other cause not reasonably within control of
459 Buyer or Seller, and which, by exercise of reasonable diligent effort, the non-performing party is unable in whole or in
460 part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the Force
461 Majeure prevents performance under this Contract, provided, however, if such Force Majeure continues to prevent
462 performance under this Contract more than 14 days beyond Closing Date, then either party may terminate this
463 Contract by delivering written notice to the other and the Deposit shall be refunded to Buyer, thereby releasing Buyer
464 and Seller from all further obligations under this Contract.
465 **H. CONVEYANCE:** Seller shall convey marketable title to the Real Property by statutory warranty, trustee's,
466 personal representative's, or guardian's deed, as appropriate to the status of Seller, subject only to matters described
467 in STANDARD A and those accepted by Buyer. Personal Property shall, at request of Buyer, be transferred by
468 absolute bill of sale with warranty of title, subject only to such matters as may be provided for in this Contract.
469 **I. CLOSING LOCATION; DOCUMENTS; AND PROCEDURE:**
470 (i) **LOCATION:** Closing will take place in the county where the Real Property is located at the office of the
471 attorney or other closing agent ("Closing Agent") designated by the party paying for the owner's policy of title
472 insurance, or, if no title insurance, designated by Seller. Closing may be conducted by mail or electronic means.
473 (ii) **CLOSING DOCUMENTS:** At Closing, Seller shall furnish and pay for, as applicable, deed, bill of sale,
474 certificate of title, construction lien affidavit, owner's possession affidavit, assignments of leases, and corrective
475 instruments. Seller shall provide Buyer with paid receipts for all work done on the Property pursuant to this Contract.
476 Buyer shall furnish and pay for, as applicable, mortgage, mortgage note, security agreement, financing statements,
477 survey, base elevation certification, and other documents required by Buyer's lender.
478 (iii) **PROCEDURE:** The deed shall be recorded upon **COLLECTION** of all closing funds. If the Title
479 Commitment provides insurance against adverse matters pursuant to Section 627.7841, F.S., as amended, the
480 escrow closing procedure required by STANDARD J shall be waived, and Closing Agent shall, **subject to**
481 **COLLECTION of all closing funds**, disburse at Closing the brokerage fees to Broker and the net sale proceeds to
482 Seller.
483 **J. ESCROW CLOSING PROCEDURE:** If Title Commitment issued pursuant to Paragraph 9(c) does not provide
484 for insurance against adverse matters as permitted under Section 627.7841, F.S., as amended, the following escrow
485 and closing procedures shall apply: (1) all Closing proceeds shall be held in escrow by the Closing Agent for a period
486 of not more than 10 days after Closing; (2) if Seller's title is rendered unmarketable, through no fault of Buyer, Buyer
487 shall, within the 10 day period, notify Seller in writing of the defect and Seller shall have 30 days from date of receipt
488 of such notification to cure the defect; (3) if Seller fails to timely cure the defect, the Deposit and all Closing funds
489 paid by Buyer shall, within 5 days after written demand by Buyer, be refunded to Buyer and, simultaneously with
490 such repayment, Buyer shall return the Personal Property, vacate the Real Property and re-convey the Property to
491 Seller by special warranty deed and bill of sale; and (4) if Buyer fails to make timely demand for refund of the
492 Deposit, Buyer shall take title as is, waiving all rights against Seller as to any intervening defect except as may be
493 available to Buyer by virtue of warranties contained in the deed or bill of sale.
494 **K. PRORATIONS; CREDITS:** The following recurring items will be made current (if applicable) and prorated as of
495 the day prior to Closing Date, or date of occupancy if occupancy occurs before Closing Date: real estate taxes
496 (including special benefit tax assessments imposed by a CDD), interest, bonds, association fees, insurance, rents
497 and other expenses of Property. Buyer shall have option of taking over existing policies of insurance, if assumable, in
498 which event premiums shall be prorated. Cash at Closing shall be increased or decreased as may be required by
499 prorations to be made through day prior to Closing. Advance rent and security deposits, if any, will be credited to
500 Buyer. Escrow deposits held by Seller's mortgagee will be paid to Seller. Taxes shall be prorated based on current
501 year's tax with due allowance made for maximum allowable discount, homestead and other exemptions. If Closing
502 occurs on a date when current year's millage is not fixed but current year's assessment is available, taxes will be
503 prorated based upon such assessment and prior year's millage. If current year's assessment is not available, then
504 taxes will be prorated on prior year's tax. If there are completed improvements on the Real Property by January 1st of
505 year of Closing, which improvements were not in existence on January 1st of prior year, then taxes shall be prorated
506 based upon prior year's millage and at an equitable assessment to be agreed upon between the parties, failing which,
507 request shall be made to the County Property Appraiser for an informal assessment taking into account available
508 exemptions. A tax proration based on an estimate shall, at either party's request, be readjusted upon receipt of
509 current year's tax bill. This STANDARD K shall survive Closing.
510 **L. ACCESS TO PROPERTY TO CONDUCT APPRAISALS, INSPECTIONS, AND WALK-THROUGH:** Seller shall,
511 upon reasonable notice, provide utilities service and access to Property for appraisals and inspections, including a

Buyer's Initials: _ci_ _____  _____   Page 9 of 11   Seller's Initials _____  _____
FloridaRealtors/FloridaBar-1  Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com. 

STANDARDS FOR REAL ESTATE TRANSACTIONS (CONTINUED)

512 walk-through (or follow-up walk-through if necessary) prior to Closing.
513 **M. RISK OF LOSS:** If, after Effective Date, but before Closing, Property is damaged by fire or other casualty ("Casualty Loss") and cost of restoration (which shall include cost of pruning or removing damaged trees) does not exceed 1.5% of Purchase Price, cost of restoration shall be an obligation of Seller and Closing shall proceed pursuant to terms of this Contract. If restoration is not completed as of Closing, a sum equal to 125% of estimated cost to complete restoration (not to exceed 1.5% of Purchase Price), will be escrowed at Closing. If actual cost of restoration exceeds escrowed amount, Seller shall pay such actual costs (but, not in excess of 1.5% of Purchase Price). Any unused portion of escrowed amount shall be returned to Seller. If cost of restoration exceeds 1.5% of Purchase Price, Buyer shall elect to either take Property "as is" together with the 1.5%, or receive a refund of the Deposit, thereby releasing Buyer and Seller from all further obligations under this Contract. Seller's sole obligation with respect to tree damage by casualty or other natural occurrence shall be cost of pruning or removal.

**N. 1031 EXCHANGE:** If either Seller or Buyer wish to enter into a like-kind exchange (either simultaneous with Closing or deferred) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party shall cooperate in all reasonable respects to effectuate the Exchange, including execution of documents; provided, however, cooperating party shall incur no liability or expense related to the Exchange, and Closing shall not be contingent upon, nor extended or delayed by, such Exchange.

**O. CONTRACT NOT RECORDABLE; PERSONS BOUND; NOTICE; COPIES:** Neither this Contract nor any notice of it shall be recorded in any public records. This Contract shall be binding on, and inure to the benefit of, the parties and their respective heirs or successors in interest. Whenever the context permits, singular shall include plural and one gender shall include all. Notice and delivery given by or to the attorney or broker (including such broker's real estate licensee) representing any party shall be as effective as if given by or to that party. All notices must be in writing and may be made by mail, personal delivery or electronic (including "pdf") media. A legible facsimile or electronic (including "pdf") copy of this Contract and any signatures hereon shall be considered for all purposes as an original.

**P. INTEGRATION; MODIFICATION:** This Contract contains the full and complete understanding and agreement of Buyer and Seller with respect to the transaction contemplated by this Contract and no prior agreements or representations shall be binding upon Buyer or Seller unless included in this Contract. No modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it.

**Q. WAIVER:** Failure of Buyer or Seller to insist on compliance with, or strict performance of, any provision of this Contract, or to take advantage of any right under this Contract, shall not constitute a waiver of other provisions or rights.

**R. RIDERS; ADDENDA; TYPEWRITTEN OR HANDWRITTEN PROVISIONS:** Riders, addenda, and typewritten or handwritten provisions shall control all printed provisions of this Contract in conflict with them.

**S. COLLECTION or COLLECTED:** "COLLECTION" or "COLLECTED" means any checks tendered or received, including Deposits, have become actually and finally collected and deposited in the account of Escrow Agent or Closing Agent. Closing and disbursement of funds and delivery of Closing documents may be delayed by Closing Agent until such amounts have been COLLECTED in Closing Agent's accounts.

**T. LOAN COMMITMENT:** "Loan Commitment" means a statement by the lender setting forth the terms and conditions upon which the lender is willing to make a particular mortgage loan to a particular borrower.

**U. APPLICABLE LAW AND VENUE:** This Contract shall be construed in accordance with the laws of the State of Florida and venue for resolution of all disputes, whether by mediation, arbitration or litigation, shall lie in the county in which the Real Property is located.

ADDENDA AND ADDITIONAL TERMS

**19. ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this Contract (**Check if applicable**):

- ☐ A. Condominium Assn.
- ☒ B. Homeowners' Assn.
- ☐ C. Seller Financing
- ☐ D. Mortgage Assumption
- ☐ E. FHA/VA Financing
- ☐ F. Appraisal Contingency
- ☐ G. Short Sale
- ☐ H. Homeowners' Insurance
- ☐ I. FIRPTA
- ☐ J. Interest-Bearing Acct.
- ☒ K. "As Is"
- ☐ L. Right to Inspect/ Cancel
- ☐ M. Defective Drywall
- ☐ N. Coastal Construction Control Line
- ☐ O. Insulation Disclosure
- ☐ P. Pre-1978 Housing Statement (Lead Based Paint)
- ☐ Q. Housing for Older Persons
- ☐ R. Rezoning
- ☐ S. Lease Purchase/ Lease Option
- ☐ T. Pre-Closing Occupancy
- ☐ U. Post-Closing Occupancy
- ☐ V. Sale of Buyer's Property
- ☐ W. Back-up Contract
- ☐ X. Kick-out Clause
- ☐ Y. Seller's Attorney Approval
- ☐ Z. Buyer's Attorney Approval
- ☐ AA. Licensee-Personal Interest in Property
- ☐ BB. Binding Arbitration
- ☐ Other _____

Buyer's Initials _____  Page 10 of 11  Seller's Initials _____
FloridaRealtors/FloridaBar-1   Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com.   Instanet

559* **20. ADDITIONAL TERMS:**
560*
561*
562*
563*
564*
565*
566*
567*
568*
569*

570 <center>**COUNTER-OFFER/REJECTION**</center>
571* ☐ Seller counters Buyer's offer (to accept the counter-offer, Buyer must sign or initial the counter-offered terms and
572 deliver a copy of the acceptance to Seller).
573* ☐ Seller rejects Buyer's offer.

574 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE**
575 **OF AN ATTORNEY PRIOR TO SIGNING.**

576 **THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR.**

577 *Approval of this form by the Florida Realtors and The Florida Bar does not constitute an opinion that any of the terms*
578 *and conditions in this Contract should be accepted by the parties in a particular transaction. Terms and conditions*
579 *should be negotiated based upon the respective interests, objectives and bargaining positions of all interested*
580 *persons.*

581 AN ASTERISK (*) FOLLOWING A LINE NUMBER IN THE MARGIN INDICATES THE LINE CONTAINS A BLANK TO
582 BE COMPLETED.

583* Buyer: *Esmeralda Narvaez* [DocuSigned: 468CC0E7772C446...]  Date: 10/10/2010
          ESMERALDA NARVAEZ

584* Buyer: _____  Date: _____

585* Seller: *Emmanuel Guerrier* EMMANUEL GUERRIER (POWER OF ATTORNEY)  Date: 10-14-10
         ALICE GUERRIER

586* Seller: _____  Date: _____

587 Buyer's address for purposes of notice                Seller's address for purposes of notice
588* _____                      _____
589* _____                      _____
590* _____                      _____

591 **BROKER:** Listing and Cooperating Brokers, if any, named below (collectively, "Broker"), are the only Brokers entitled
592 to compensation in connection with this Contract. Instruction to Closing Agent: Seller and Buyer direct Closing Agent
593 to disburse at Closing the full amount of the brokerage fees as specified in separate brokerage
594 agreements with the parties and cooperative agreements between the Brokers, except to the extent Broker has
595 retained such fees from the escrowed funds. This Contract shall not modify any MLS or other offer of compensation
596 made by Seller or Listing Broker to Cooperating Brokers.

597* _____Irma  Larancuente_____                    _____M. Vanessa  Vignati_____
598 **Cooperating Sales Associate, if any**            **Listing Sales Associate**

599* _____The Keyes Company, Inc._____              _____Realty World Executive Homes_____
600 **Cooperating Broker, if any**                    **Listing Broker**

This software is licensed to [Ms. Irma Larancuente - The Keyes Company, Inc.] www.transactiondesk.com. Instanet

DocuSign Envelope ID: 5BE1AFB6-BF7D-47D0-BC8D-BB63634AF28D

## Comprehensive Rider to the
## Residential Contract For Sale And Purchase
THIS FORM HAS BEEN APPROVED BY THE FLORIDA REALTORS AND THE FLORIDA BAR



If initialed by all parties, the clauses below will be incorporated into the Florida Realtors®/Florida Bar Residential Contract For Sale And Purchase between _____ ALICE GUERRIER _____
and _____ ESMERALDA NARVAEZ _____ (SELLER)
concerning the Property described as _____ 12327 SW 148 TERRACE, MIAMI, FL, 33186 _____ (BUYER)

Buyer's Initials _____  _____   Seller's Initials _____  _____

### B. HOMEOWNERS' ASSOCIATION/COMMUNITY DISCLOSURE

IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS CONTRACT SHALL TERMINATE AT CLOSING.

BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THIS DISCLOSURE.

Disclosure Summary For _____ Villas of Deerwood Replat _____
(Name of Community)

(a) AS A BUYER OF PROPERTY IN THIS COMMUNITY, YOU WILL BE OBLIGATED TO BE A MEMBER OF A HOMEOWNERS' ASSOCIATION ("ASSOCIATION").
(b) THERE HAVE BEEN OR WILL BE RECORDED RESTRICTIVE COVENANTS ("COVENANTS") GOVERNING THE USE AND OCCUPANCY OF PROPERTIES IN THIS COMMUNITY.
(c) YOU WILL BE OBLIGATED TO PAY ASSESSMENTS TO THE ASSOCIATION. ASSESSMENTS MAY BE SUBJECT TO PERIODIC CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____. YOU WILL ALSO BE OBLIGATED TO PAY ANY SPECIAL ASSESSMENTS IMPOSED BY THE ASSOCIATION. SUCH SPECIAL ASSESSMENTS MAY BE SUBJECT TO CHANGE. IF APPLICABLE, THE CURRENT AMOUNT IS $_____ PER _____.
(d) YOU MAY BE OBLIGATED TO PAY SPECIAL ASSESSMENTS TO THE RESPECTIVE MUNICIPALITY, COUNTY, OR SPECIAL DISTRICT. ALL ASSESSMENTS ARE SUBJECT TO PERIODIC CHANGE.
(e) YOUR FAILURE TO PAY SPECIAL ASSESSMENTS OR ASSESSMENTS LEVIED BY A MANDATORY HOMEOWNERS' ASSOCIATION COULD RESULT IN A LIEN ON YOUR PROPERTY.
(f) THERE MAY BE AN OBLIGATION TO PAY RENT OR LAND USE FEES FOR RECREATIONAL OR OTHER COMMONLY USED FACILITIES AS AN OBLIGATION OF MEMBERSHIP IN THE HOMEOWNERS' ASSOCIATION. IF APPLICABLE, THE CURRENT AMOUNT IS $ 159.00 PER month.
(g) THE DEVELOPER MAY HAVE THE RIGHT TO AMEND THE RESTRICTIVE COVENANTS WITHOUT THE APPROVAL OF THE ASSOCIATION MEMBERSHIP OR THE APPROVAL OF THE PARCEL OWNERS.
(h) THE STATEMENTS CONTAINED IN THIS DISCLOSURE FORM ARE ONLY SUMMARY IN NATURE, AND, AS A PROSPECTIVE PURCHASER, YOU SHOULD REFER TO THE COVENANTS AND THE ASSOCIATION GOVERNING DOCUMENTS BEFORE PURCHASING PROPERTY.
(i) THESE DOCUMENTS ARE EITHER MATTERS OF PUBLIC RECORD AND CAN BE OBTAINED FROM THE RECORD OFFICE IN THE COUNTY WHERE THE PROPERTY IS LOCATED, OR ARE NOT RECORDED AND CAN BE OBTAINED FROM THE DEVELOPER.

10/15/2010                         *Esmeralda Narvaez*
DATE                               BUYER  Signed by: Esmeralda Narvaez

_____                             _____
DATE                               BUYER

Page _____ of Comprehensive Rider to the Residential Contract For Sale And Purchase
CR-1 Rev. 6/10 © 2010 Florida Realtors® and The Florida Bar. All rights reserved.

This software is licensed to [M. Vanessa Vignati - Realty World Executive Homes] www.transactiondesk.com

instanet forms

DocuSign Envelope ID: FDF2152D-12B4-4670-82B6-4EC2862D4679

d Executive Homes
Vanessa Vignati PA

**FLORIDA ASSOCIATION OF REALTORS®**

Addendum No. __1__ to the Contract dated __10-14-2010__ between

__ALICE GUERRIER__ (Seller)

and __ESMERALDA NARVAEZ__ (Buyer)

concerning the property described as:
__12327 SW 148 TERRACE, MIAMI, FL, 33186__

(the "Contract"). **Buyer** and **Seller** make the following terms and conditions part of the Contract:

BUYER AND SELLER AGREE TO THE NEW PURCHASE PRICE OF $115,000 (APPRAISED VALUE)

BUYER AGREES TO PAY A TOTAL OF $8400.00 OUTSIDE OF CLOSING TO THE SELLER TOWARDS THE PURCHASE OF THE PROPERTY REGARDLESS OF THE APPRAISED VALUE OF $115,000. THIS AMOUNT REGARDLESS OF APPRAISED VALUE SHALL BE PAID AT CLOSING. ALSO SAID AMOUNT SHALL NOT INTERFERE WITH BUYERS FINANCING OR ELSE SELLER WILL KEEP ANY DEPOSIT GIVEN DOWN INITIALLY AT SIGNING OF CONTRACT.

THIS ADDENDUM TO CONTRACT IS CONTINGENT UPON APPRAISAL BEING DONE WITHIN 7 DAYS FROM THE DATE THE SELLER SIGNS THIS ADDENDUM.

THIS ADDENDUM IS CONTINGENT UPON RECEIVING A DU UNDERWRITING FINDINGS AND/OR FULL PRE-APPROVAL FROM BUYERS LENDER WITHIN 7 DAYS FROM THE DATE THE SELLER SIGNS THIS ADDENDUM.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

*Contract closing date shall be extended to on or before January 20, 2011.*

Date: 12/15/2010    Buyer: *Esmeralda Narvaez* (DocuSigned by Esmeralda Narvaez)

Date: _____    Buyer: _____

Date: 12-16-10    Seller: *Emanuel Guerrier*

Date: _____    Seller: _____

ACSP-2a  Rev. 6/94  © 1994 Florida Association of REALTORS® All Rights Reserved. Licensed to Alta Star.    User Reg# 2Y033BY3360DD90E-1021
Software and Added Formatting Copyright 2008 Alta Star Software, Inc. All Rights Reserved. (305) 279-8898



DocuSign Envelope ID: A5640178-B563-427A-924F-D697506D0BE5          GUERRIER                    PAGE 01/01



**Realty World Executive Homes**
Vanessa Vignati PA

Addendum No. _____ to the Contract dated __10-14-2010__ between

_____ ALICE GUERRIER _____ (Seller)

and _____ ESMERALDA NARVAEZ _____ (Buyer)
concerning the property described as:
__12327 SW 148 TERRACE, MIAMI, FL, 33186__
__VILLAS AT DEERWOOD__

(the "Contract"). Buyer and Seller make the following terms and conditions part of the Contract:

_contract closing date shall be extended to on or before_

Date: 3/4/2011                    Buyer: *Esmeralda Narvaez*
                                         ESMERALDA NARVAEZ

Date: _____                  Buyer: _____

Date: 3-1-11                      Seller: *Emmanuel Guerrier*
                                          ALICE GUERRIER

Date: _____                  Seller: _____

ACSP-2a  Rev. 8/94  © 1994 Florida Association of REALTORS® All Rights Reserved. Licensed to Alta Star.    User Reg# 2Y033EY3360DD90E-1021
Software and Added Formatting Copyright 2008 Alta Star Software, Inc. All Rights Reserved. (305) 279-8898

